Froessel, J.
Defendant was convicted, after a trial, of failing to dim her headlights in violation of subdivision 3 of section 15 of the Vehicle and Traffic Law, and fined $5. The evidence showed that on May 1, 1959, at approximately 2:30 a.m. on a dark night, defendant was driving a 1958 Oldsmobile south ón the New York Thruway in the right-hand lane. A State Trooper was driving north in the left-hand lane in the patrol of his post. When the Trooper was approximately a thousand feet away from defendant’s car, he observed that the four headlights on said car- — two on each side — were on high beam. The high beam headlights interfered with the Trooper’s operation of his car, requiring him to reduce his speed, and he flicked his lights from high-low to high-low while approaching defendant. She *393 did not lower her beams from high to low in response to this signal, and the Trooper crossed over the 50-foot mall separating the north and southbound lanes, pursued defendant for about half a mile, and gave her a summons.
Before the taking of any evidence, defendant moved to dismiss the information upon the ground that the section under which she was being prosecuted was invalid and unconstitutional. The motion was denied, and defendant was subsequently convicted of violating subdivision 3 of section 15 of the Vehicle and Traffic Law, which provides, in pertinent part: ‘ ‘ whenever a vehicle approaching from ahead is within five hundred feet, the headlamps, if of the multiple beam type, shall be operated so that dazzling light does not interfere with the driver of the approaching vehicle, and, whenever the highway is so lighted or traffic thereon is such that illumination of the highway for more than two hundred feet ahead of the vehicle by lights on such vehicle is unnecessary or impracticable, the headlamps, if of the multiple beam type, shall be operated with the lowermost distribution of light in use.” (Emphasis supplied.) The first paragraph of subdivision 3 defines “ multiple beam type ” headlamps as headlamps ‘ ‘ designed to produce more than one distribution of light”, and further provides: “Multiple beam headlamps shall be sufficient to reveal any person, vehicle or substantial object on the highway straight ahead of such vehicle for a distance of at least three hundred fifty feet ” — as opposed to the 200-foot illumination distance required of single beam headlamps.
The statute thus prescribes three rules of conduct in three separate and distinct situations: (1) When an approaching vehicle is 500 or less feet away, the motorist proceeding towards it is required to operate multiple beam headlamps in such a manner ‘1 that dazzling light does not interfere with the driver of the approaching vehicle ”; (2) when the highway is so lighted that headlamp illumination for a stated distance “ is unnecessary or impracticable ’ ’, the headlamps shall be operated on low beam, and (3) when the traffic on the highway is such that said headlight illumination “ is unnecessary or impracticable ”, the headlamps shall likewise be operated on low beam.
On her appeal to the County Court, defendant alleged in her affidavit of errors that the trial court erred in denying her *394 motion to dismiss the information, since ‘1 the provision of Section 15, Subdivision 3 of the Vehicle and Traffic Law that the headlamps ‘ shall be operated so that dazzling light does not interfere with the driver of the approaching vehicle ’ is so uncertain, indefinite and vague as to cause the section to be unconstitutional.” Although defendant thus questioned the constitutionality of the statute only with respect to situation (1), the County Court held 11 that the language of the statute governing each of these situations is so indefinite, unclear and ambiguous as not to give ‘ unequivocal warning ’ to citizens of the rule which is to be obeyed. Application of the statute in each of the alternative situations is therefore unconstitutional.”
Since defendant was convicted of operating her headlamps in such a manner that dazzling light interfered with the driver of an approaching vehicle, we are concerned on this appeal — as defendant concedes — only with the constitutionality of the first portion of the statute. The issue before us is whether the statute, insofar as applicable, “ satisfies the requirement that a criminal statute must be sufficiently definite, ‘ clear and positive ’ to give ‘ unequivocal warning ’ to citizens of the rule to be obeyed ” (People v. Firth, 3 N Y 2d 472, 474; see, also, People v. Grogan, 260 N. Y. 138, 145; People v. Harvey, 307 N. Y. 588; People v. Diaz, 4 N Y 2d 469, 470; People v. Caswell-Massey Co., 6 N Y 2d 497, 501). As we pointed out in the Firth case and in People v. Hildebrandt (308 N. Y. 397), the rules of the criminal law are applicable to prosecutions for traffic infractions.
In holding that the applicable portion of the statute did not satisfy constitutional requirements, the County Judge reasoned that “ the term ‘ dazzling* ’ is too vague a descriptive adjective to definitely describe either the quality or the quantity of the light which is here forbidden ”, and that, even as defined in Webster’s Dictionary, the word “dazzle” failed “to fix a definite, clear and positive point at which a light, otherwise proper, becomes ‘ dazzling ’ and illegal ’ ’. The court also held, on the authority of People v. Grogan (supra), that the word “ interfere ” was too indefinite to be constitutional.
We think it clear that the statute in question is “ sufficiently definite, 1 clear and positive ’ to give ‘ unequivocal warning ’ to citizens of the rule to be obeyed ” (People v. Firth, supra, p. 474). The phrase “ dazzling light ” manifestly refers to the *395 use of high, as opposed to low, headlight beams, and the word “ interfere ” plainly means to hinder or hamper the vision of an approaching motorist — a necessary element of the infraction. Here, as in the statute involved in People v. Harvey (307 N. Y. 588, 591, supra), “ Two things must occur to constitute the crime. One of these relates to the conduct of the accused, and the other to the effect of such conduct upon the complainant.” (Emphasis supplied.) The “ conduct of the accused ” which is proscribed is the operation of multibeam headlights so as to produce ‘‘ dazzling light ’ ’, and ‘ ‘ the effect of such conduct upon the complainant ” is interference with his vision and hence with the operation of his car.
In the context of this statute, the operation of headlights so as to produce ‘ ‘ dazzling light ’ ’ can only mean the operation of headlights on high beam. This was clearly the statutory intent (see legislative note accompanying the 1959 amendment of § 15, subd. 3; L. 1959, ch. 582, eff. July 1, 1959), and the average citizen would so understand it. The County Judge recognized as much when he noted that the statute ‘ ‘ deals with three situations in which the motorist is required to dim his headlights ” (emphasis supplied). Moreover, the statutory requirement that multiple beam headlights ‘‘ shall be sufficient to reveal any person, vehicle or substantial object on the highway straight ahead of such vehicle for a distance of at least three hundred fifty feet ” gives meaningful content to the phrase “ dazzling light ”.
The basic flaw in defendant’s reasoning is her assumption that it “is not the manipulation of light controls or the intensity or quality of the light produced, but the effect produced by that light upon another driver which is forbidden.” The statute, however, expressly provides that multiple beam headlights “ shall be operated so that dazzling light does not interfere with the driver of the approaching vehicle ” (emphasis supplied). As noted, the production of dazzling light refers to “ conduct of the accused ”, and it is the additional requirement of interference with the approaching driver that refers “ to the effect of such conduct upon the complainant ’ ’. Two elements are necessary to constitute the offense: (1) the use of high beams when an approaching vehicle is within 500 feet, and (2) interference with the vision of that driver by reason of such high beams. As to the second requirement, the Trooper testified that he signaled *396 defendant to dim her lights precisely because the high beams interfered with his operation of his car, requiring him to reduce his speed. Proof was thus offered to establish both elements of the offense.
People v. Grogan (260 N. Y. 138, supra) is not authority for the proposition that the word “interfere”, as used in this statute, is too indefinite to be constitutional. The statute involved in the Grogan case made it a misdemeanor to unnecessarily interfere with the free and proper use of the public highway, but it did not define what constituted an unnecessary interference. In other words, the crime itself was “ defined as ‘ unnecessary interference ’ ” (260 N. Y., p. 147), but no “ standard or measure of conduct ” was provided (260 N. Y., p. 149), and we noted that, in order to save the constitutionality of the statute, ‘ ‘ we must read the words ‘ unnecessarily interferes ’ * * * as ‘unreasonably interferes ’ ” (emphasis supplied).
Here, as noted, the statute proscribes particular conduct, namely, the operation of headlights so as to produce dazzling light. A ‘ ‘ standard or measure of conduct ’ ’ is expressly provided, and the element of interference with the driver of the approaching vehicle is given meaning by the prohibition against the use of dazzling light. As defendant herself concedes, ‘ ‘ In effect, what Section 15(3) of the Vehicle and Traffic Law says is, ‘ Operate your lights so as to not blind (or, alternatively, “ hinder the vision of ”) an approaching driver.’ ”
In People v. Harvey (supra) the statute provided that “ Any person who shall by any offensive or disorderly act or language, annoy or interfere with any person in any place ” was guilty of the misdemeanor, of disorderly conduct (307 N. Y., pp. 589-590; emphasis supplied). In answer to the argument ‘ ‘ that words like ‘ offensive ’, ‘ disorderly ’, ‘ annoying ’ and ‘ interfering ’ make criminality depend not on the objective nature of words or acts, but on a complainant’s reaction thereto ”, we held: “ We do not think that the statute gauges criminality by the impressions made on an annoyed or disgruntled citizen. Common sense * * * dictate[s] that language or conduct is to be adjudged to be disorderly, not merely because it offends some supersensitive or hypercritical individual, but because it is, by its nature, of a sort that is a substantial interference with (our old friend) the reasonable *397 man.” (307 N. Y., pp. 591-592; emphasis supplied.) (See, also, People v. Eckert, 2 N Y 2d 126,131.)
In the instant case, the Legislature saw fit to make the use of high beams a traffic infraction only when it interfered with the driver of an approaching vehicle. The interference contemplated was plainly hampering or hindering the vision of the approaching motorist, and this element of interference is certainly susceptible of factual proof. If the evidence shows that under the conditions prevailing the use of high beams could not reasonably have interfered with the driver of an approaching vehicle, then no infraction has been committed. It is manifest that the portion of the statute here involved affords a “ comprehensible guide, rule or information as to what must be done and what must be avoided, to the end that the ordinary member of society may know how to comply with its requirements.” (People v. Grogan, supra, p. 145.)
The order appealed from should be reversed and the case remitted to the County Court for determination upon the questions of fact raised in that court (Code Crim. Pro., § 543-a, subds. 2, 4; § 543-b).
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis, Burke and Foster concur.
Order reversed and case remitted to the County Court for further proceedings in accordance with the opinion herein.