Dorothy M. HARSHBERGER, as Administratrix of the Estate of Harry Nelson Harshberger, Deceased, Plaintiff-Appellee,

v.

ASSOCIATED TRANSPORT, INC., and Floyd Kenneth Spenton, Defendants-Appellants.

ASSOCIATED TRANSPORT, INC., Plaintiff-Appellant,

v.

Dorothy M. HARSHBERGER, as Administratrix of the Estate of Harry Nelson Harshberger, Deceased, Defendant-Appellee.

Nos. 263, 264, Dockets 25936, 25937.

United States Court of Appeals Second Circuit.

Argued March 29, 1960.

Decided Aug. 29, 1960.

---

Bartle Gorman, Utica, N. Y., for plaintiff and defendant-appellee, J. Walter Augar, Utica, N. Y., on the brief.

Copal Mintz, New York City, for defendants and plaintiff-appellant (Harold Davis, New York City, of counsel).

Before WATERMAN and BARNES,[*] Circuit Judges, and SMITH, District Judge.

BARNES, Circuit Judge.

Two appeals are here presented from judgments rendered in the United States District Court for the Northern District of New York. The first is by defendants below from a judgment in favor of plaintiff-appellee in the sum of $59,312.50, plus costs, for the alleged wrongful death of appellee's husband, and the second by defendant Associated Transport, Inc., from a judgment against it on its claim for property damage.

This action was brought (according to the judgment, though not so stated in the complaint) under Sections 130 to 134 of the Decedent Estate Law of the State of New York. It is a diversity case. 28 U.S.C. § 1332. This Court has jurisdiction of the appeals. 28 U.S.C. § 1291.

Because the principal appeal is based upon the alleged insufficiency of the evidence to support the verdict, we must consider the facts. Many are undisputed.

### A—Undisputed Facts

On April 7, 1956, at about 4:20 A.M., two vehicles approached each other from opposite directions on New York State

[*] Of the Ninth Circuit, sitting by designation.

Highway 17, about fourteen miles east of Farley and two miles west of Owego in New York State. Plaintiff's intestate was the owner and operator of a 1950 Chevrolet sedan automobile traveling in a generally easterly direction; the defendants were the owner and operator, respectively, of an "International 200" tractor and trailer being driven in a general westerly direction. This latter piece of equipment was forty-two feet long, eight feet wide, and carried a load of 19,000 or 20,000 pounds. New York State Highway 17 at the point of the accident is twenty to twenty-one feet wide and paved. On each side is a four to five foot shoulder. Weather conditions were not good. It had been and was raining steadily that night, and it was dark.

The precise point of impact is in dispute, but it was on the westerly end of a "six degree curve" in Highway 17. To the Chevrolet driver, the curve he was approaching curved to the right, and a macadamized "old" country road, sixteen or seventeen feet in width, continued straight ahead. The tractor-trailer had just rounded the curve to the left when it came to rest after the impact.

The general position of the two vehicles after the accident is not in dispute, although their precise positions are. They were roughly due north of a telephone pole marked (and referred to by witnesses) as "N. Y. S. Eng. 515." This pole was located ten feet south of Highway 17 pavement and within a few feet of the start of the curve to the south. After the accident, the Chevrolet was facing *west* (in the opposite direction to that in which it had been going), partly on the pavement and partly on the south shoulder, and a foot or two north of the pole. The center of the trailer was almost directly opposite the same pole, on the north side of the highway and the north shoulder. The tractor and trailer were jackknifed, so that the trailer headed west and the tractor angled southeast. The right wheels of the trailer were on the northerly shoulder. Both rear wheels of the tractor were at or near the north shoulder or north edge of the pavement.

The decedent, Harry Harshberger, and his brother, Edwin, had left Johnston, Pennsylvania, bound for North Adams, Massachusetts, at about 8:00 P.M., Friday night, April 6, 1956. The place of the accident was between two hundred and thirty-six and two hundred and forty-two miles east of the point of departure. Edwin, driving a truck (and familiar with the highway, having traveled it before) was traveling in the lead, and decedent (unfamiliar with the highway) was following behind, generally, four or five car lengths and at times at a greater distance. Decedent had put in a full day's work at his regular occupation as a maintenance man, from 8:00 A.M. to 5:30 P.M., before starting the trip with his brother. Four stops had been made for coffee, food or gasoline.

At the site of the accident, the speed limit was fifty miles per hour. There was no testimony that either vehicle at any time had exceeded this speed. But two witnesses testified as to the vehicles' respective speeds. Edwin Harshberger testified the defendants' vehicle was traveling "fast"[1] when he met it before

---

1. Edwin Harshberger made no precise estimate in miles per hour of defendant Spenton's speed. As Edwin met the tractor-trailer, he testified it was "moving fast."

"Q. You characterize that, Mr. Harshberger, as moving fast? When you testified for Mr. Gorman [attorney for plaintiff] you characterized it as moving fast? A. That's right.

"Q. Have you any other or better judgment as to how fast, Mr. Harshberger? A. I could not say the speed of it.

"Q. Are you trying to tell me that it was going faster than 60 to 70 miles per hour? A. I am not.

"Q. Are you trying to tell me that it was going faster than 25 miles per hour? A. Yes, that I am.

the accident. He and his brother were traveling forty to fifty miles per hour, a speed which he considered "fast," considering the darkness and the weather. The defendant Spenton testified he was going forty miles per hour before the accident, when he first saw the decedent's vehicle on the wrong side of the highway, and that he thereafter slowed to thirty-five miles per hour before the impact.

Edwin, decedent's brother, was not an eyewitness to the impact, as he had successfully met and passed the tractor-trailer, as well as two trucks that were following the tractor-trailer some two hundred feet and more behind it. Edwin testified he was at the time of meeting the tractor-trailer some four to five hundred feet east of the start of the curve, at which time the decedent's Chevrolet was "four or five car lengths" (eighty to one hundred feet) behind Edwin's truck. As Edwin met and passed the tractor-trailer it had its running lights and headlights on, and it was completely on its own or north side of the highway. Edwin continued some distance south and east before stopping. *Edwin Harshberger did not hear the crash of the impact.*

When defendant Spenton first saw the decedent's Chevrolet partially on the wrong or north side of the highway, it was seventy-five to eighty feet ahead. "The closer we got together the more sure I was. I pulled over until I felt my right front wheel hit the shoulder, and at that time we made contact." Spenton further testified he did not know the exact point of the impact. He was hurled from his tractor onto the south side of the highway by the impact and rendered unconscious.

When Spenton saw the decedent's car continue to come toward him partially on the wrong side of the highway, he had snapped his headlight beam low and high several times; he pumped his brakes, and turned to the right. He had

less than a second to act before the impact.

The physical damage to the Chevrolet was extensive. Its entire left side almost to the rear wheel, and its left front over to the right headlight, were severely crushed. The tractor's left front was badly damaged. Photographs of the damage to each vehicle were before the jury.

### B—Disputed Facts

(1) There is a dispute as to the precise location of the tractor, and particularly the front wheels thereof, *after* the accident. There was evidence the wheels were completely north of the center line; and there is an inference (the tractor's rear wheels being close to the north edge of the twenty-one foot pavement, and the front bumper of the tractor being fourteen feet five and one-half inches ahead of the rear wheels) that they extended south of the center line. This inference depends upon the angle which the tractor took, facing southeast, *after* the impact. It is no proof as to the position of the vehicles at the time of impact.

(2) There is a dispute as to the distance the decedent's Chevrolet was behind his brother's truck just prior to the accident. Spenton testified the decedent's Chevrolet was two hundred and fifty to three hundred *yards* behind Edwin's truck, rather than the eighty to one hundred *feet* to which Edwin testified.

The physical location of the two vehicles, after the accident, opposite pole 515 lends support to the accuracy of Spenton's testimony as to the distance between the Harshberger brothers' truck and car, rather than to the accuracy of Edwin Harshberger's testimony. Had Edwin been four to five hundred feet east of the juncture of the "old" country road and Highway 17, and the decedent eighty to one hundred *feet* behind Edwin, the

"Q. All right, let's start going by mile. Was it going faster than 50 miles an hour? A. That I wouldn't say.

"Q. Was it going faster than 40 miles an hour? A. I can't say the actual mileage."

tractor and trailer then being thirty to forty feet further east, the impact would necessarily have taken place three hundred and fifty to four hundred and fifty feet east of the juncture and pole 515, rather than within approximately fifty feet of it.

But no matter if the trier of fact rejected defense testimony entirely and accepted plaintiff's version, no evidence of negligence was thereby proven upon which liability could rest.

(3) There was a dispute as to the existence or non-existence of scrape marks or gouges in the pavement. These were testified to by Officers Davis and Lockwood of the Tioga County Sheriffs Department. They testified they arrived at the scene of the accident at 4:23 A.M. and 4:40 A.M., respectively. They each testified there was a "fresh" scrape mark or gouge in the pavement from a point "approximately in the middle of the west bound lane" east of where the Chevrolet had come to rest, forming an arc to the middle of the Chevrolet forty-seven and one-half feet long at the arc's base. They paced this distance and measured it with a tape measure twice. In the immediate vicinity of that mark there was broken glass and debris on the pavement. There was no debris and no marks elsewhere, at least within the immediate vicinity of the position of the two vehicles at rest, and the scrape mark. Edwin Harshberger testified in rebuttal he had visited the scene of the accident that same morning subsequent to the accident April 7, 1956, but saw no mark as described by the Sheriff's officers. He went to the scene in a police car with someone else. No other witness testified to the absence of the scrape mark. Thus, the only testimony of any physical evidence which might establish the point of impact (whether this testimony be accepted as worthy of credence or not) was that it was within a space fifty feet east of pole 515; a point which Edwin Harshberger testified his brother's vehicle had passed, by at least three hundred feet, *prior* to the accident. But if the trier of fact found the mark on the highway never existed, this would add nothing to plaintiff's burden to establish liability. It might detract from the credibility of the testimony of the two deputy sheriffs, but adds nothing to plaintiff's case-in-chief.

(4) There is a dispute as to how far Edwin Harshberger traveled beyond the scene of the accident before he stopped. The witness Halstead, driver of one of the truck and trailers following defendant Spenton, testified he passed a pickup truck, "painted up," coming off the bridge less than one-half mile east of the scene of the accident. Halstead assumed this was Edwin's truck. Edwin Harshberger denies he traveled that far. Whether he did or not is of no consequence in determining the liability of the defendants.

(5) Appellee raises what she alleges to be a disputed fact; that there was, by Exhibit 14, "proof of the fact that the front left tire on the tractor-trailer closest to and first to contact decedent's vehicle was a flat tire with well-worn tread and in truth a 'fairly bare' tire [as stated in summation by appellee's counsel]," that this contradicted appellants' testimony of due care in examining the brakes, tires and lights of the tractor-trailer; that thus "these appellants submitted to the jury a key issue of fact which could be resolved *no other way* than against appellants on the basis of the evidence." (Emphasis by appellee.)

We shall consider this point subsequently.

There is but one legal question before us on the principal case: Was the evidence insufficient, as a matter of law, to justify the submission of the case to the jury?

Appellee emphasizes the evidence which throws doubt (a) upon the existence of the "fresh" scrape mark and "debris" as testified to by Officers Davis and Lockwood; (b) the thoroughness and efficacy with which defendant Spenton "checked" the brakes, tires and lights of his vehicle. But if both points are granted appellee, they subtract from ap-

pellants' defense but add nothing to appellee's case. Weakness of proof that the accident occurred on the north or appellants' side of the highway does not prove it occurred on the south, or appellee's side. Nor does weakness of proof of due care, on the part of a defendant, even if it causes such affirmative evidence to be totally disregarded, prove a lack of due care or add one iota of proof of negligence on the part of that same defendant, if there exists no other proof of such lack. The burden of proof in personal injury actions still remains on plaintiffs. Cole v. Swagler, 1955, 308 N.Y. 325, 331, 125 N.E.2d 592; St. Andrassy v. Mooney, 1933, 262 N.Y. 368, 371, 186 N.E. 867.

■ Appellee urges that the flashing of defendants' lights was "ample evidence of negligence"; relying on Section 15, subd. 3 of the Vehicle and Traffic Law of the State of New York, McKinney's Consol.Laws, c. 71. The only evidence in the record is that this occurred when the two vehicles were seventy-five to one hundred feet apart, approaching each other at admitted and equal speeds of at least forty miles per hour; each traveling at least sixty feet per second, and by any calculation, closer to one second than two seconds apart before the impact. At that time the only evidence in the record is that decedent's vehicle was partially across the center line and appellants' vehicle was not. Even were we to find some possible evidence of negligence in raising or lowering the headlight beams at the last moment (which we do not), there is a complete and absolute lack of proximate cause. Cole v. Swagler, supra. Prosser, Law of Torts, §§ 47–50 (2 ed. 1955).

Appellee relies on a claim that the front left tire of the tractor was "somewhat bare" and flat, as disclosed by Exhibit 14, taken after the accident. The language "somewhat bare" (whatever that may mean) appears in this case for the first time in appellee's brief (p. 16). In her counsel's argument to the jury, the tire was described as "fairly bare" (whatever that may mean). There is

not the slightest evidence the tire was flat before the accident, and it is hardly to be expected it would not be flat after the impact, terrific as it was. No witness testified as to whether it was flat or not, before or after the accident. We have carefully examined plaintiff's Exhibit 14, and particularly the left front tire in question as it appears in the photograph. While the photograph was obviously taken to show the general damage to the front of the tractor, and not specifically the tire, we are unable to say whether it was flat or not, *after* the accident. But if it was, that fact is immaterial. It is readily apparent that the tread design appears on the tire; there is no "smoothness," if by smoothness is meant a lack of tread. We are not certain we understand what counsel means by describing the tire as "somewhat" or "fairly" bare. The photograph discloses "somewhat more" of a tread than a lack of it. The weakness of this argument relied upon by appellee is the fact disclosed by a careful examination of the record—that nowhere during the trial did appellee's counsel seek to establish by pleading or the introduction of any evidence or by the examination of any witness that the tire of the left front wheel of the tractor was "somewhat" or to any degree "bare." It is only in argument to the jury, and to this Court, that such an interpretation of the photograph springs full-blown to life.

The specifications of negligence in the complaint were speed; failure to stay on the proper side of the highway; failure to give warning; failure to give aid and assistance in attempting to pass; and that the defendants otherwise violated the laws and statutes of the State of New York.

This is not a case where a plaintiff discovers some fact during the course of the trial, perhaps by reason of the testimony of a defendant or some other witness, and seeks to add some new theory or an additional charge of negligence to that which already exists. This photograph (Exhibit 14) which now

allegedly tells so much with respect to the defendants' tractor, and particularly its left front tire, was introduced in evidence by the plaintiff-appellee. It had been in her counsel's possession before the trial. When it was introduced in evidence no question was asked concerning the tread or flatness or appearance of the left front tire. And in argument, but a passing reference was made to it by appellee's counsel. Even in such passing reference, it apparently was with difficulty that her counsel stated the existence of the fact, now declared important as well as obvious, i. e., that the tire *was* bare or smooth or worn.[2]

▆ Appellee urges that the evidence was sufficient to go to the jury. She relies on the rule that "in a death case a plaintiff is not held to as high a degree of proof of the cause of action as where an injured plaintiff can himself describe the occurrence." Noseworthy v. City of New York, 1948, 298 N.Y. 76, 80, 80 N.E.2d 744, 746. In other words, but slight evidence of negligence is necessary. Wank v. Ambrosino, 1954, 307 N.Y. 321, 121 N.E.2d 246. With this

rule we have no quarrel. But we have yet to find a precedent holding that where there is no evidence of a defendant's negligence that such case must go to a jury—absent a *res ipsa loquitur* factual situation, a case of absolute liability, or the adoption of the rule of liability without fault. There being no facts in this case calling for the adoption of the first two principles, and New York not having as yet adopted what Dean Roscoe Pound has described as the doctrine of the involuntary Good Samaritan,[3] we find no basis for claiming that any negligence of a defendant existed in this case. The burden of such proof is on the appellee below. There being no such proof, the judgment rests purely on conjecture and surmise, no cause of action has been established, and the judgment must be, and is reversed.

Appellee has filed with this Court the "Case on Appeal," together with the "Exhibit Volume," in the four cases each entitled Faust v. Central Greyhound Lines, Inc., cases in which counsel for this appellee appeared as counsel for the defendant. We do not find in them a similar factual situation.[4]

---

2. Counsel for appellee's complete statement was: "I want you [the jury] to see whether that looks to you like a fairly bare tire. I want you to look that over. * * * Now, is that tire bare? Did it fail to get him around the turn? * * * Did the bare tire, and you can see it is bare, did it give out and assist his passing over into territory where he should not have been. * * * [Y]ou can make the inference that this accident happened on Mr. Harshberger's side of the road * * * with that tire being bare."

3. Pound, Editorial, Modern Trends in Tort Law, 16 NACCA L.J. 21, 35 (1955).

4. In the Faust cases, decided November 24, 1948, the Court of Appeals of New York said:

"The actions were originally tried at a Trial Term and verdicts were in favor of the plaintiff in each of the four cases. On appeal from the judgments entered upon the verdicts, the Appellate Division reversed on the ground that the verdicts were against the weight of the evidence, 271 App.Div. 948, 68 N.Y.S.2d 441, 442. The cases were subsequently tried before the court and a jury and verdicts in favor

of the plaintiffs were returned. Judgments on the verdicts were reversed by the Appellate Division, and the complaints dismissed, 273 App.Div. 1055, 79 N.Y.S.2d 763; 273 App.Div. 1055, 79 N.Y.S.2d 764; 273 App.Div. 1055, 81 N.Y.S.2d 177, and the plaintiffs appeal.

"Latimer B. Senior, of Utica (Bartle Gorman, of Utica, of counsel), for respondent.

"In each case: Judgment of Appellate Division reversed and the action remitted to that court for determination upon questions of fact there raised (Civil Practice Act, Sec. 606), with costs to abide the event, on the ground that in each case the evidence presents questions of fact as to the defendant's negligence, and in the first case as to freedom from contributory negligence on the part of plaintiff's intestate."

Faust v. Central Greyhound Lines, 1948, 298 N.Y. 721, 83 N.E.2d 138.

The second Supreme Court, Appellate Division, reversal was *per curiam*, dated May 12, 1948, and had been based "on the ground that the finding of negligence on the part of the driver of defendant's bus is without evidence to support it."

We have also been furnished by counsel for appellee with a copy of the decision of the New York Court of Appeals, rendered March 3, 1960, in the matter of People v. Meola, 7 N.Y.2d 391, 198 N.Y. S.2d 276, 165 N.E.2d 851. That case upholds the constitutionality of Subdivision 3 of Section 15 of the New York Vehicle and Traffic Law, which prohibits operating a vehicle, under certain circumstances, "so that dazzling light * * * interfere[s] with the driver of the approaching vehicle." It holds that the words "dazzling" and "interfere" are not so uncertain, indefinite or vague as to render the act unconstitutional. We accept that ruling as controlling, but find it does not control the instant case in any way.

■ Having determined that the evidence was insufficient as a matter of law to justify the submission of the case to the jury, appellants request us to reverse the judgment, set aside the verdict, reverse the denial of defendants' motion for final judgment, and remand the cases to the District Court to act upon the two motions, allegedly heretofore unacted upon, to dismiss the complaint upon the ground the evidence was legally insufficient.

Such motions to dismiss were made at the end of plaintiff's case below, and after all evidence was in. These motions to dismiss were considered by both parties below, and by the trial court, as the equivalent of a motion for a directed verdict, properly made in jury cases. Cf. Rules 41 and 50, Federal Rules of Civil Procedure, 28 U.S.C.A.

The record shows, however, that each of such motions were acted upon, after the verdict had been returned, at the same time appellants' motion to set aside that verdict was made and denied. (Appellants' Appendix, pp. 203, 204.)

Faust v. Central Greyhound Lines, 1948, 79 N.Y.S. 764, at page 765.

On December 29, 1948, on remission from the Court of Appeals, the judgment and order was reversed on the facts and a new trial granted on the ground the verdict was against the weight of the

All such motions, as so interpreted, were proper, and preserved appellants' rights. Cone v. West Virginia Paper Co., 1947, 330 U.S. 212, 67 S.Ct. 752, 91 L.Ed. 849.

The judgment in favor of the plaintiff-appellee is reversed.

The jury having determined that there was no liability on the part of Harshberger to Associated Transport, Inc., we will not disturb that verdict, and Associated's request for a new trial on that issue is denied.

Reversed in part, and affirmed in part.

evidence. Faust v. Central Greyhound Lines, App.Div.1948, 86 N.Y.S.2d 651, 652, 654. We find no subsequent reference to the cases in the reports, and fail to see how any decisions therein are controlling here.