OPINION OF THE COURT
John Copertino, J.
Defendants Frank Russo and Stony Brook Systems, Inc., were indicted for the unlawful use of secret scientific material, a violation of Penal Law § 165.07, in that defendant Frank Russo, "cause[d] a tangible reproduction of secret scientific material, consisting of a computer program” belonging to Stony Brook University Hospital, and that Stony Brook Systems, Inc., sold "features of the program to Albert-Einstein Medical Center in Philadelphia, Pennsylvania”.[1]
This court has for its consideration defendants’ joint motion to dismiss the indictment on the grounds that the indictment, "fails to allege the commission of any crime” and that the application of Penal Law § 165.07 "to the acts alleged in the indictment would violate defendants’ right to due process”. Defendants have submitted a memorandum of law in support of their motion. The People have submitted an affirmation in *679 opposition accompanied by a memorandum of law. Defendants have submitted a reply "letter”.
After oral argument, two interrelated questions are presented: (1) Does the definition of secret scientific material include an electronic reproduction of a computer program, and, if so; (2) Were the defendants informed by the statute (Penal Law § 165.07) that their conduct was prohibited. Both questions require an affirmative answer and consequently the motion must be denied.
The indictment in question charges defendants with violating Penal Law § 165.07 which provides:
"A person is guilty of unlawful use of secret scientific material when, with intent to appropriate to himself or another the use of secret scientific material, and having no right to do so and no reasonable ground to believe that he has such right, he makes a tangible reproduction or representation of such secret scientific material by means of writing, photographing, drawing, mechanically or electronically reproducing or recording such secret scientific material.
"Unlawful use of secret scientific material is a class E felony.”
The definition for secret scientific material is found in Penal Law § 155.00 (6) which states that, " 'Secret scientific material’ means a sample, culture, microorganism, specimen, record, recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects, or records a scientific or technical process, invention or formula or any part or phase thereof, and which is not, and is not intended to be, available to anyone other than the person or persons rightfully in possession thereof or selected persons having access thereto with his or their consent, and when it accords or may accord such rightful possessors an advantage over competitors or other persons who do not have knowledge or the benefit thereof.” Defendants contend that inasmuch as a "computer program” is not included within this definition, Penal Law § 165.07 "does not criminalize unlawful use of computer software”, and consequently the indictment fails to state a crime.[2]
In analyzing a legislative enactment defining a crime, "the common-law policy of strictly construing a penal code no *680 longer obtains in this State.” (People v Ditta, 52 NY2d 657, 660.) Penal Law § 5.00 states that the provisions of the Penal Law "must be construed according to the fair import of their terms to promote justice and effect the objects of the law.” In addition, the statute authorizes the courts to dispense with hypertechnical or strained interpretations of the Penal Law (People v Ditta, supra). Thus, words employed in a statute should be given their ordinary and usual meaning present in common usage and understanding (People v Byron, 17 NY2d 64; People v Hernandez, 115 Misc 2d 503). When reviewing a statute, the statute must be viewed as a whole, "unless the language is to be read 'merely as a collection of English words’ (United States v. Dotterweich, 320 U.S. 277, 280)” (State of New York v Garlick Parkside Mem. Chapels, 30 AD2d 143, 147, affd 23 NY2d 754).
Having delineated the ground rules for statutory construction this court will now examine Penal Law § 155.00 (6) to determine whether or not an electronic reproduction of a "computer program” is included within the definition of secret scientific material.
A "computer” is "a device that computes, especially, an electronic machine that performs high-speed mathematical or logical calculations or that assembles, stores correlates or otherwise processes and prints information derived from coded data in accordance with a predetermined program”.[3] A "program” is "a procedure for solving a problem, including collection of data, processing, and presentation of results”. Therefore, a "computer program” is a program that has been coded for a computer. Inasmuch as defendants use the term software, "software” is, "written or printed data, such as programs, routines and symbolic languages, essential to the operation of computers; documents containing information on the operation and maintenance of computers”.
Now that this court has set forth a definition for "computer program”, this court must determine whether a "computer program” is a "scientific or technical process, invention or formula”. In order to do this a few more definitions must be considered.
"Scientific” means, "of relating to, or employing the methodology of science”. "Science” is "an activity that appears to require study and method”; "knowledge, especially knowledge *681 gained through experience”. "Technical” means, "pertaining to, or derived from technique”; "specialized”. "Process” means, "a system of operations in the production of something”; "a series of actions, changes, or functions that bring about an end or result”; "to put through the steps of a prescribed procedure”; "to perform operations on data”. "Invention” means, "a new device, method, or process developed from study and experimentation”. "Formula” means, "an established form of words or symbols for use in a ceremony or procedure”; "a method of doing or treating something that relies on an established, uncontroversial model or approach”.
This court notes that a computer program does not just exist. It is the result of time spent and effort exerted on the part of a trained individual or individuals. Because such training requires study and the learning associated with such study results in a specialized knowledge, the resulting program — in accordance with the above definitions — can therefore be described as both "scientific” and "technical”. Because the "computer program” directs a computer to perform steps in a prescribed procedure and operations on data to produce a desired result, it is a "process”. Further, because a "computer program” does not exist until it is written or created as a result of an individual’s study or experimentation, or, if the computer program already exists, and is modified in some way to make it different or new, it is, an "invention”. Finally, because a "computer program” represents a method of doing something that relies on "an established model or approach”, a "computer program” is a "formula” in accordance with the definition above. Therefore, based on the above, a "computer program” qualifies as "a scientific or technical process, invention, or formula” as envisioned by Penal Law § 155.00 (6).
This court deems it worthy to mention that the indictment alleges defendants "electronically reproduce^] such secret scientific material”. Although "electronic reproduction” is not specifically mentioned in Penal Law § 155.00 (6), the statute declares that the scientific material make take the form of: "a sample, culture, microorganism, specimen, record, recording, document, drawing or any other article, material, device or substance which constitutes, represents, evidences, reflects, or records” (emphasis added). This portion of the section creates a "class” of items and broadens the statute’s scope by not limiting the forms in which the scientific material is reproduced. (Philbrick & Brother v Florio Co-op. Assn., 137 App Div 613, *682 affd 200 NY 526; McKinney’s Cons Laws of NY, Book 1, Statutes §§ 114, 239.)[4]
In order to bolster their contention that "computer program” is not included within Penal Law § 165.07, defendants point to recent unpassed legislation in the area of computers in the computer field. However, such unenacted legislation is without significance. As the Court of Appeals recently stated in Clark v Cuomo (66 NY2d 185, 190-191): "Legislative inaction, because of its inherent ambiguity, 'affords the most dubious foundation for drawing positive inferences’ (United States v Price, 361 US 304, 310-311; see also, Brooklyn Union Gas Co. v State Human Rights Appeal Bd., 41 NY2d 84, 90, rearg denied 42 NY2d 824, remittitur amended 44 NY2d 789 [distinguishing situation where inactivity can imply approval of long-standing construction of a statute, not present here]).”
This court now turns to the intriguing question of whether or not the defendants were by the language of Penal Law § 165.07 "afford[ed] some comprehensible guide, rule or information as to what must be done [or] what must be avoided * * * to comply with its [i.e., the statute’s] requirements” (People v Grogan, 260 NY 138, 145).
The test to be applied is "whether a reasonable man subject to the statute would be informed of the nature of the offense prohibited and what is required of him.” (People v Byron, 17 NY2d 64, 67.) In addition to the test, it must be noted that there is a strong presumption that a statute duly enacted by the Legislature is constitutional. In order for a court to declare a law unconstitutional, the invalidity must be demonstrated beyond a reasonable doubt. (People v Pagnotta, 25 NY2d 333, 337; Matter of Van Berkel v Porter, 16 NY2d 37, 40; McKinney’s Cons Laws of NY, Book 1, Statutes § 150.)
As previously expressed, Penal Law § 165.07 states, "A person is guilty of unlawful use of secret scientific material when, with intent to appropriate to himself or another the use of secret scientific material, and having no right to do so and no reasonable ground to believe that he has such right, he makes a tangible reproduction or representation of such secret scientific material by means of writing, photographing, drawing, mechanically or electronically reproducing or recording such secret scientific material.”
*683 The reading of the statute makes its purpose clear, and gives " 'unequivocal warning’ to citizens of the rule to be obeyed” (People v Meola, 7 NY2d 391, 394).
Although the Legislature gave secret scientific material an elastic and not a specific definition — as previously discussed —it does not mean that Penal Law § 165.07 is constitutionally defective. As stated by the United States Supreme Court: "The root of the vagueness doctrine is a rough idea of fairness. It is not a principle designed to convert into a constitutional dilemma the practical difficulties in drawing criminal statutes both general enough to take into account a variety of human conduct and sufficiently specific to provide fair warning that certain kinds of conduct are prohibited.” (Colten v Kentucky, 407 US 104, 110.)
"A criminal statute must define conduct to be punished but impossible standards are not required.” (People v Obertance, 105 Misc 2d 558, 559-560; People v Newton, 73 Misc 2d 854, 856; United States v Petrillo, 332 US 1.) Penal Law § 165.07 does just that.
Finally, Penal Law § 165.07 has been the law within this State since September 1, 1967. The general purposes of the Penal Law include, "[t]o proscribe conduct which unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests”, and "[t]o give fair warning of the nature of the conduct proscribed”.[5]
Therefore, this court determines that defendants were in *684 formed of the nature of the offense prohibited and what was required of them.
Accordingly, defendants’ joint motion is denied in its entirety.

. The indictment in its entirety reads as follows:
"the grand jury of the county of Suffolk, by this indictment, accuses the above-named defendants of the crime of unlawful use of secret scientific material in violation of Section 165.07 of the Penal Law, committed as follows:
"The defendants, frank russo and stony brook systems, inc. from on or about June 1,1981, to on or about August 31, 1981, in the County of Suffolk, with intent to appropriate to themselves the use of secret scientific material, and having no right to do so and no reasonable ground to believe that they had such right, made a tangible reproduction of such secret scientific material by means of electronically reproducing such secret scientific material, in that:
"The defendant, Frank Russo, Vice President of the defendant Stony Brook Systems, Inc., acting within the scope of his employment and on behalf of the corporation, used his position as the Director of University Systems Analysis at the University Hospital at Stony Brook to cause a tangible reproduction of secret scientific material, consisting of a computer program, valued in excess of three hundred thousand dollars ($300,000) to be made. The defendant, Russo, knowing that he had no right to reproduce that program and having no reasonable ground to believe that he had such right, intended to and did appropriate the material to his own use and that of Stony Brook Systems, Inc., by selling features of the program to the Albert-Einstein Medical Center in Philadelphia, Pennsylvania.”

. Defendants note in their papers that the indictment uses the term "computer program”. Defendants use "computer software” as a synonym for "computer program”.

. All definitions appearing in this opinion were derived from the American Heritage Dictionary (2d Coll ed 1982).

. Although this court has determined that "computer program” falls within the scope of secret scientific material, the question of whether or not the "computer program” in question is "secret” is a question of fact— beyond the scope of defendants’ motion — to be decided by the trier of facts.

. Penal Law § 1.05 in its entirety reads as follows:
"§ 1.05 General purposes.
"The general purposes of the provisions of this chapter are:
"1. To proscribe conduct which unjustifiably and inexcusably causes or threatens substantial harm to individual or public interests;
"2. To give fair warning of the nature of the conduct proscribed and of the sentences authorized upon conviction;
"3. To define the act or omission and the accompanying mental state which constitute each offense;
"4. To differentiate on reasonable grounds between serious and minor offenses and to prescribe proportionate penalties therefor;
"5. To provide for an appropriate public response to particular offenses, including consideration of the consequences of the offense for the victim, including the victim’s family, and the community; and "6. To insure the public safety by preventing the commission of offenses through the deterrent influence of the sentences authorized, the rehabilitation of those convicted, and their confinement when required in the interests of public protection.” (As amended by L 1982, ch 612, § 1.)